IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**VIVIAN FAY WRAY,**

    **Plaintiff,**

    v.          Civil Action No.: 5:12-cv-16

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## REPORT AND RECOMMENDATION
## THAT CLAIMANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND
## COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT BE GRANTED

### I. Introduction

A.   Background

Plaintiff, Vivian Fay Wray ("Claimant"), filed her Complaint on January 30, 2012, seeking judicial review pursuant to 42 U.S.C. §§ 405(g) of an adverse decision by Defendant, Commissioner of Social Security ("Commissioner").[1] Commissioner filed his Answer on March 30, 2012.[2] On April 30, 2012, Claimant filed a Motion for Summary Judgment.[3] On May 25, 2012, Commissioner filed a Motion for Summary Judgment.[4]

B.   The Pleadings

   1.   Claimant's Motion for Summary Judgment & Memorandum in Support

   2.   Commissioner's Motion for Summary Judgment & Memorandum in Support

---

[1] Dkt. No. 1.

[2] Dkt. No. 10.

[3] Dkt. No. 13.

[4] Dkt. No. 15.

C. Recommendation

I recommend that:

1. Claimant's Motion for Summary Judgment be **DENIED** because the ALJ properly considered medical opinion testimony, properly considered Claimant's obesity and the cumulative effect of Claimant's impairments, and made a proper credibility determination.

2. Commissioner's Motion for Summary Judgment be **GRANTED** for the same reasons set forth above.

## II. Facts

A. Procedural History

Claimant filed an application for Disability Insurance Benefits on March 6, 2007, alleging disability since March 2, 2006 due to a back injury, bulging and compressed discs, depression, and emotional issues. (Tr. 83 ). The application was denied on June 11, 2007. (Tr. 83-87). On January 24, 2008, Claimant reapplied for benefits alleging disability since March 31, 2006. (Tr. 169-78). The application was initially denied on June 19, 2008 and on reconsideration on November 25, 2008 (Tr. 93-97, 100-102). On December 19, 2008, Claimant requested a hearing before an ALJ and received a hearing on May 11, 2010 in Morgantown, West Virginia.

On June 21, 2010, the ALJ issued a decision adverse to Claimant finding that she was not under a disability within the meaning of the Social Security Act. (Tr. 75-86). Claimant requested review by the Appeals Council, but this request for review was denied. (Tr. 1-7). Claimant then filed this action, which proceeded as set forth above, having exhausted her administrative remedies.

B.   Personal History

Claimant was born on February 2, 1966, and was forty-four years old on the date of the May 11, 2010 hearing before the ALJ. (Tr. 56). Claimant has a college diploma and lapsed cosmetology license. (Tr. 45, 47). She has prior work experience as a cosmetologist, teacher, line cook, fast food restaurant employee, and hair salon manager and stylist. (Tr. 45, 47).

C.   Medical History

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that the Claimant is not under a disability and can still perform work in the national economy:

On May 24, 2006, Claimant had an MRI of her lumbar spine which revealed mild degenerative disc desiccation, mild disc space narrowing, and a small broad-based paracentral disc protrusion which slightly deformed the thecal sac. (Tr. 328). The MRI also showed Grade I anterior spondylolisthesis at the L5-S-1 levels. (Tr. 328). In July 2006, Beverly Epstein, M.D., diagnosed Claimant with "mild developmental spondylolisthesis of the L5 and S1 with herniated nucleus pulposus of L4-L5, mild in nature, and degenerative disk disease." (Tr. 310). She was prescribed a Lidoderm patch and Dr. Epstein recommended physical therapy. (Tr. 308).

On October 2, 2006, Claimant called University Health Associates ("UHA") for more pain medication because her new doctor was "uncomfortable writing her continuing scripts for her Oxycontin and Oxycodone." (Tr. 306). She was prescribed Ultram and was also given a prescription for chiropractic care. (Tr. 306).

In April 2007, Claimant saw Dr. Mohamed Fahim at the Pain Management Center. He noted Claimant had a steady gait, could walk on her toes and heels, had tenderness over the

sacroiliac joints and the trochanter, had mild tenderness over the lower back in the mid-line region, and her cranial nerves, reflexes, and motor power were intact. (Tr. 697-98). Dr. Fahim recommended steroid injections and physical therapy in addition to medication. (Tr. 699). He gave Claimant four injections between May 2007 and June 2007, and after each injection she rated her pain level as zero. (Tr. 360-73). In July 2007, although Claimant attended four physical therapy sessions, she missed two scheduled sessions and failed to return. (Tr. 361). Accordingly, she was discharged from physical therapy for noncompliance. (Tr. 361).

In August 2007, Claimant saw Dr. Andrew Foy for problems with hypothyroidism, depression, anxiety, GERD and apparent chronic lower back pain. (Tr. 417). Although Claimant admitted to a pain medication dependence, she was alert and oriented with no focal motor or sensory deficits present. (Tr. 417). On December 6, 2007, Claimant had a second MRI of her lower back which showed mild disc degeneration, minimal spondylolisthesis, minimal bulging, and no actual disc herniation, spinal stenosis or clear cut lateral impingement. (Tr. 358).

On December 13, 2007, Claimant saw Dr. Foy with complaints of knee pain resulting from an injury and he recommended an external knee brace. (Tr. 412). On March 31, 2008, Thomas Stein, E.D.D. examined Plaintiff at the request of the West Virginia Disability Determination Service. During the examination, Claimant noted that she managed her own personal hygiene, cared for her children, fixed coffee, cooked, folded laundry, and shopped for groceries. (Tr. 391). Dr. Stein determined Claimant had mild deficiencies in social functioning. (Tr. 391). A May 2008 MRI showed Claimant's left knee had a tear in the posterior horn of the medial meniscus, an anterior cruciate ligament cyst, moderate osteoarthritis, and bursitis. (Tr. 418).

4

On May 9, 2008 Claimant was examined by Richard Douglas, M.D. He found that her motor strength was a five out of five in all major muscle groups of the upper and lower extremities but that she had minimal L5-S1 spondylolisthesis secondary to pars defects and right neural foraminal narrowing at L5-S1. (Tr. 424). He found Claimant was a poor candidate for surgery and instead recommended physical therapy and weight loss to improve Claimant's low back pain. (Tr. 424). On May 21, 2008, Kip Beard, M.D. performed a consultative examination of Claimant. He noted that she limped on the left due to knee pain but she did not appear to need ambulatory aids. (Tr. 427). He noted her cervical spine had no spinous process or muscular tenderness. (Tr. 427). He did, however, note muscular tenderness in the spine, hips and knee. Claimant did not show signs of atrophy or sensory loss, and she could heel-walk, toe-walk, and tandem-walk, although with left knee pain. (Tr. 429). He also did not identify any neurological compromise. (Tr. 428).

On July 11, 2008, Claimant was evaluated by psychiatrist Safwat Attia, M.D. (Tr. 567-69). Dr. Attia noted that Claimant was fairly dressed and groomed, was cooperative and showed no involuntary movements. (Tr. 568). Her speech was clear, she had no articulation problems, and she denied suicidal or homicidal thoughts. (Tr. 568). Dr. Attia noted that Claimant was alert, oriented, of average intelligence, and had fair judgment in hypothetical situations. (Tr. 568). However, Claimant stated she was depressed, became angry easily, and spent most of her time at home watching T.V. (Tr. 567). She prescribed Claimant Seroquel and adjusted her Elavil. (Tr. 568). On July 31, 2008, Claimant had a laparoscopic supracervical hysterectomy due to complaints of dysmenorrheal and dyspareunia. (Tr. 439-566).

On September 17, 2008, Dr. Foy wrote a letter stating that in his opinion, Claimant was

5

completely disabled. (Tr. 574). On November 25, 2008, however, Cindy Osborne, D.O. conducted a physical residual functional capacity assessment and determined Claimant could occasionally lift 20 pounds and frequently lift 10 pounds, stand and/or walk about 6 hours, and sit about 6 hours in an 8-hour workday. (Tr. 585). On November 19, 2008, G. David Allen, Ph.D. conducted a mental RFC assessment and concluded Claimant had the mental and emotional capacity to engage in work-related activity where the social demand is limited and where accommodations are made for any physical limitations that may exist. (Tr. 585).

On May 5, 2009, Dr. Attia found that Claimant was showing a partial response to her treatment and that she was responding fairly. (Tr. 657-58). On June 1, 2009, Dr. Foy completed a Multiple Impairment Questionnaire. (Tr. 618). He diagnosed her with chronic low back pain with narcotic dependence, depression, chronic iron deficiency anemia, hypothyroidism, hyperlipidemia, history of morbid obesity with malabsorption due to gastric bypass (unsuccessful), and chronic left knee pain with medial meniscus tear, but wrote that she should improve with continued treatment. (Tr. 618). He wrote that she was severely limited in her ability to maintain meaningful employment for at least another twelve months. (Tr. 624). On June 3, 2009, Dr. Attia again noted that Claimant was responding fairly to treatment (Tr. 657-58) and that Lyrica helped to manage her pain. (Tr. 659). In August 2009, Claimant again reported that the medicine was helpful, and that her mood and pain management had improved. (Tr. 659).

In September 2009, Dr. Fahim administered medial branch blocks which helped to reduce Claimant's pain and increase the mobility in her lower back. (Tr. 647). In October 2009, Claimant again saw Dr. Foy, this time with complaints that she felt something in her back pop which she was doing some lifting. (Tr. 654). Dr. Foy recommended that she continue her current

pain medication, and also noted that she was seeing a psychiatrist and getting injections. (Tr. 654). On November 17, 2009, Dr. Fahim performed a radiofrequency ablation of the left lumbar medial branches, causing Claimant's pain level to be reduced to a zero. (Tr. 652).

In December 2009, Dr. Foy noted that Claimant had a mild paraspinal muscle spasm on examination but that she had no midline bony tenderness or palpable abnormalities. (Tr. 652). On January 13, 2010, Claimant again saw Dr. Foy with complaints of knee pain from a recent fall, however he only found minimal edema of the right knee, no crepitus, only some tenderness in the medial tibia plateau, and full range of motion. (Tr. 651). On February 22, 2010, Claimant saw Dr. Foy with complaints of a rash under the skin folds of her abdomen and breasts. He diagnosed her with cutaneous candidiasis and a draining carbuncle on the left breast. He treated these conditions with Ketoconazole cream, Diflucan, and Bactrim. (Tr. 649).

D.   Testimonial Evidence

Claimant testified that her worst problem is with her lower back due to her two bulging and compressed disks. (Tr. 52). She also testified that she has problems with her hips and knees, and that if she is standing for too long, numbness will start moving down her leg. (Tr. 53). Claimant testified that she has high cholesterol for which she takes Lipitor. (Tr. 54-55). She testified that she also has a thyroid problem and takes Synthroid for it. (Tr. 54). She testified that she has eczema and psoriasis that effect her skin, and she uses ointments and creams to treat her skin problems. (Tr. 54). She testified that she considers herself overweight. (Tr. 54). She also has depression and anxiety, and to treat these she sees a psychologist and takes Lexapro and Elavil. (Tr. 54, 58). She has problems with her memory and testified that if she tells people a story, she will have to stop in the middle and ask where she was. (Tr. 61). She has also been diagnosed

7

with a narcotic dependency to pain medicine. (Tr. 54). She has been taking Oxycontin and Percocet intermittently since the summer of 2005. (Tr. 55). She also takes Lyrica, Oxycontin, Oxycodone, and Neurotrin. (Tr. 59). She also testified that she takes Prilosec for acid reflux and is also sometimes on yeast infection medication. (Tr. 58-59).

She testified that she can only walk one block and she can only stand for ten minutes. She tries not to do any bending at the waist and she cannot squat. She testified that she cannot life more than five pounds.

E.      Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect her daily life.

Claimant is married and lives together with her husband and her two boys, who were in fourth grade at the time of the hearing. She has a West Virginia driver's license. (Tr. 40).

She testified that during the day she sometimes watches T.V., and she uses the computer to play mahjong and to check her email once a week. (Tr. 62). She goes to church, reads her bible during devotional time, and makes short trips to the grocery store. (Tr. 62). She testified that she sleeps for about eight hours a night. (Tr. 64). She is capable of taking care of her personal hygiene such as showering, bathing, dressing, using the toilet, and washing her hair. (Tr. 65). She is able to prepare simple meals for her family. (Tr. 65). She also does a few chores such as folding the laundry and organizing and straightening the house. She used to enjoy bike riding, softball and camping but she cannot do those things now because if her injuries and illnesses.

She testified that she has been able to take care of her children since she adopted them and her pain medication addiction has not effected her ability to care for them. (Tr. 65). She helps them with their school work, however they get themselves ready for school and feed themselves breakfast. (Tr. 66). She also enjoys reading and singing. (Tr. 68).

### III.  The Motions for Summary Judgment

A. <u>Contentions of the Parties</u>

Claimant's brief alleges that the ALJ erred by: 1) failing to follow the treating physician rule, 2) failing to Give Adequate Consideration to Claimant's Left Knee Impairment Given her Obesity and the Cumulative Effect of Plaintiff's Impairments, and 3) failing to properly evaluate Ms. Wray's credibility.

Commissioner contends that substantial evidence supports the ALJ's evaluation of her treating physician's opinion, that the ALJ properly considered Claimant's obesity, that the ALJ explicitly discussed the range of Claimant's impairments and the effect they had, and that Claimant properly assessed her credibility given the objective medical evidence.

B. <u>The Standards</u>.

1. <u>Summary Judgment</u>.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587

(1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.  Judicial Review. Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

C.  Discussion

1.  Whether the ALJ Erred in Failing Follow the Treating Physician Rule

Claimant first contends that the ALJ erred by failing to follow the treating physician rule. More specifically, Claimant argues the ALJ engaged in a selective discussion of the evidence, in which he focused on a single aspect of Claimant's medical conditions which he mischaracterized to discount Dr. Foy's opinion, and that he did not provide a rational basis for discounting Dr. Foy's opinion.

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 664-65 (1988); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is

supported by substantial evidence." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

All medical opinions are to be considered in determining the disability status of a claimant. 20 C.F.R. §§ 404.1527(b), 416.927(b). Nonetheless, opinions on ultimate issues, such as RFC and disability status under the regulations, are reserved exclusively to the ALJ. 20 C.F.R. §§ 404.1527(e)(1)-(3), 416.927(e)(1). Statements by medical sources to the effect that a claimant is "disabled" are not dispositive, but an ALJ must consider all medical findings and evidence that support such statements. Id. The opinion of claimant's treating physician is entitled to great weight and may only be disregarded if there is persuasive contradictory evidence. Evans v. Heckler, 734 F.2d 1012, 1015 (4th Cir. 1984). Controlling weight may be given only in appropriate circumstances to medical opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources, when the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. §416.927(d)(2). See Craig, 76 F.3d at 590 (holding that a treating physician's medical opinion must be given controlling weight only when it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record).

While the credibility of the opinions of the treating physician are entitled to great weight, it may be disregarded if there is persuasive contradictory evidence. Evans, 734 F.2d at 1015. To decide whether the impairment is adequately supported by medical evidence, the Social Security

Act requires that impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Heckler v. Campbell, 461 U.S. at 461; 20 C.F.R. §§ 404.1508; Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990). Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(2) (2005). Courts often accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). However, "although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Id. (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)).

In this case, the ALJ afforded little weight to Dr. Foy's opinion on whether Claimant is disabled. SSR 96-5p explains how ALJs are to consider medical source opinions on issues reserved to the Commissioner as set forth in 20 C.F.R. § 404.1527. Opinions on ultimate issues, such as RFC and disability status under the regulations, are reserved exclusively to the ALJ. 20 C.F.R. §§ 404.1527(e)(1)-(3), 416.927(e)(1). Moreover, the ALJ is not obligated to "give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (e)(1) and (e)(2)." § 404.1527(e)(3). Therefore, in this case, the ALJ did not err by giving little weight to these opinions as "the issue of disability is reserved for the

Commissioner." (Tr. 24).

In rejecting the opinions of Dr. Foy on Claimant's disabled status, the ALJ rather found that "[t]he objective findings through the record show mild lumbar spine findings." (Tr. 24). This is supported by medical evidence, which the ALJ went through in detail. The ALJ noted, for example, that Beverly Epstein, M.D. found Claimant's lumbar spine impairments to be "mild in nature," and her pain could be alleviated through home exercise, physical therapy, over-the-counter anti-inflammatory medication, and a Lidoderm patch. (Tr. 22). The ALJ also noted that a December 6, 2007 MRI showed "only mild disc degeneration and minimal bulging at L4-5. There was bilateral pars defect with minimal spondylolisthesis, disc degeneration and bulging at L5-S1 but this produced no significant central stenosis." (Tr. 22). The ALJ noted that Claimant was able to go without pain clinic treatment for more than a year. (Tr. 22). Dr. Douglas noted that her MRI only revealed minimal L5-S1 spondylolisthesis and that she was a very poor candidate for surgery. (Tr. 22). Dr. Kip Beard noted that Claimant did not experience any neurologic compromise and that straight leg raising did not did not produce any radicular complaints. (Tr. 23). These objective findings led the ALJ to discredit Dr. Foy's opinion, and his decision is supported by substantial evidence, so he did not commit error.

2.  <u>Whether the ALJ Erred in Failing to Give Adequate Consideration to Claimant's Left Knee Impairment Given her Obesity and Whether he Failed to Consider the Cumulative Effect of Plaintiff's Impairments</u>

Claimant argues that the ALJ erred in ignoring the exacerbating effect of Claimant's obesity on her left knee impairment. Commissioner contends the ALJ properly evaluated Claimant's obesity singly and in combination with her other impairments.

Social Security Ruling 02-01p explains the Administration's policy and protocol on the

evaluation of obesity. "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-1p. The Ruling provides that at step two of the five step evaluation, obesity may be considered severe alone or in combination with another medically determinable impairment. It further provides that the Administration will do "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." SSR 02-1p[6]. An adjudicator must consider the impact of a claimant's obesity on his residual functional capacity. Hess v. Astrue, 2:09-cv-124, 2010 U.S. Dist. LEXIS 29986, *5-6 (S.D. Ohio, March 29, 2010); SSR 02-1p.

Claimant's argument that the ALJ failed to properly consider Claimant's obesity in his determination must fail. The ALJ's decision demonstrates that the ALJ evaluated and considered Claimant's obesity in determining Claimant's residual functional capacity. The ALJ recognized Claimant's obesity was severe and accounted for such. (Tr. 18). The ALJ also made note of medical records from Claimant's physicians who addressed Claimant's obesity in connection with his determination of her RFC. See Tr. 22-23. Finally, the ALJ performed a detailed analysis of Claimant's obesity in connection with her other impairments and combination of impairments. (Tr. 18-19). Here, the ALJ calculated her BMI ranges for the time period in question, and found that she fell within the Level III obesity range, which is reserved for "'extreme' obesity, representing the greatest risk for developing obesity-related impairments." (Tr. 19). However, the ALJ noted that "despite her obesity and osteoarthritis, she was reported to move somewhat freely at the time of the consultative examination" and thus he determined that she had failed to establish that the effects of her obesity result in a combination of impairments that satisfy the requirements. (Tr. 19). The Court thus finds Claimant's assertion

14

that the ALJ provided a mere cursory review of Claimant's obesity to be without merit.

Next, Claimant argues that the ALJ failed to properly consider the cumulative effects of her impairments and focused instead, "[c]ontrary to his obligation under 20 C.F.R. § 404.1527,...on a single aspect of Ms. Wray's medical conditions." (Pla's Mot. Summ. J. at 12). Claimant's argument, however, ignores the fact that the ALJ made a specific finding that Claimant's combination of impairments was severe since they resulted in significant limitations on her ability to perform basic work activities. But, the ALJ found that "the record does not establish that claimant is subject to an impairment or combination of impairments, which meets or equals the requirements of any section of the Listings." (Tr. 18-19). The ALJ then went on to discuss Claimant's various impairments and the effect they have on her ability to work. Accordingly, this Court finds that the ALJ properly evaluated her combination of impairments and Claimant's argument is without merit.

3.      Whether the ALJ Erred in Failing to Make a Proper Credibility Determination

Next, Claimant argues the ALJ erred by failing to make a proper credibility determination. More specifically, Claimant argues the ALJ did not comport with the requirements of 20 C.F.R. § 404.1529(c)(4) which directs the ALJ to evaluate Claimant's credibility compared to the record evidence, rather than to the ALJ's own RFC assessment.

The Fourth Circuit stated the standard for evaluating a claimant's subjective complaints of pain in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). Under Craig, when a claimant alleges disability from subjective symptoms, he must first show the existence of a medically determinable impairment that could cause the symptoms alleged. Id. at 594. The ALJ must next "expressly consider" whether a claimant has such an impairment." Id. at 596. If the claimant

15

makes this showing, the ALJ must consider all evidence, including the claimant's statements about his symptoms, in determining whether the claimant is disabled. Craig, 76 F.3d at 595. While the ALJ must consider the claimant's statements, he need not credit them to the extent they are inconsistent with the objective medical evidence or to the extent the underlying objective medical impairment could not reasonably be expected to cause the symptoms alleged. Id.

Additionally, the regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) Type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 404.1529(c) and 416.929(c) (2010).

Accompanying factors are provided in SSR 96-7p that the adjudicator must also consider in addition to the objective medical evidence when assessing the credibility of an individual's statements. These factors include medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by medical sources; and statements and reports about claimant's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

"Because he had the opportunity to observe the demeanor and to determine the credibility

of the claimant, the ALJ's observations concerning these questions are to be given great weight."
Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984) (citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976)). "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference." See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997). "We will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) (citing Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990)).

Claimant's argument regarding the ALJ's credibility determination is without merit. In coming to his conclusion that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible," the ALJ complied with the two-part test in Craig. First, the ALJ found, in accordance with step one, that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr.21). Second, in accordance with step two, the ALJ dedicated explained his reasoning for discrediting Claimant's testimony. (Tr. 21).

In coming to his conclusion that her subjective complaints are not entirely credible, he cites a variety of medical evidence, including the fact that her MRIs showed that there "are no disc herniations, nerve root impingement, or other evidence of a disabling lumbar spine condition." (Tr. 21). The ALJ also cites Dr. Douglas's evaluation, in which he found Claimant to be a poor candidate for surgical intervention. He also noted that although she claims to be in great pain, she has opted to receive her pain medications from her primary care physician who is not a pain specialist. (Tr. 21). Although Claimant argues it was inappropriate for the ALJ to rely

17

on this evidence because she cannot afford to see a pain management specialist, Claimant never testified that she could not afford to see such a specialist. To the contrary, she testified that she has health insurance. (Tr. 64). Accordingly, the ALJ's decision not to fully credit Claimant's statements was consistent with the objective medical record.

For the above reasons, Claimant's assertions do not warrant relief.

### IV.  Recommendation

For the foregoing reasons, I recommend that:

1. Claimant's Motion for Summary Judgment be **DENIED.**

2. Commissioner's Motion for Summary Judgment be **GRANTED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, on or before **September 7, 2012**, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: August 24, 2012

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE